CONSTANTINE | CANNON

**Raymond C. Fay**
202-204-3507
rfay@constantinecannon.com

NEW YORK | WASHINGTON

July 13, 2010

United States Magistrate Judge Steven M. Gold
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: <u>Ramos et al. v. SimplexGrinnell LP</u>, No. 07-CV-981 (SMG)

Dear Judge Gold:

      On behalf of plaintiffs Roberto Ramos, *et al.*, we respectfully respond to the questions raised by the Court at the oral argument of June 28, 2010 and in the minute order of June 29, 2010. This letter further supplements plaintiffs' class certification and summary judgment motions, and their opposition to defendant's summary judgment motion. "Tr." refers to the transcript of the June 28 hearing.

      <u>Further allocation of "TI" and "non-TI" work where codes are missing.</u> The Court asked if there was a way to refine the allocation between testing and inspection work ("TI") and other claimed prevailing wage work ("non-TI") in the report of plaintiffs' expert David L. Crawford, Ph. D., where Dr. Crawford as a default categorized prevailing wage work as "non-TI" if codes were missing in the project data (Tr. 58-60). The Court also asked what the impact would be if work that was allocated to non-TI by Dr. Crawford due to missing codes in the project data were deemed to be all TI (Tr. 55-56).

      As explained in the attached further supplemental declaration of Dr. Crawford, the allocation can be refined, and the impact of classifying all of the work with missing codes as TI can be quantified. Dr. Crawford's explanation is summarized here.

      Dr. Crawford has refined the allocation between non-TI and TI, which results in non-TI damages of $9,789,795, including interest, and based on the assumption that all "self-audit" payments should be considered mitigation of damages related to non-TI work. If, instead of allocating the missing code information between non-TI and TI, all of the work with missing codes were classified as TI, the result would be approximately $8.4 million in non-TI damages, including interest, and offsetting all the self-audit payments as mitigation.

      The refinement is reasonably certain and the result should be accepted by the Court as a more precise allocation between TI and non-TI damages. In the refinement Dr. Crawford allocated the missing code entries either to TI or non-TI based on the ratio of the entries that

145289.1

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

have codes. This allocates ambiguous hours (those with missing codes) between TI and non-TI work, based on an assumed share or assumed shares. Specifically, Dr. Crawford utilized variables in the project databases, labeled "task_type" in ACE and "task_desc" in Legacy. For each ambiguous record in the Ace data, Dr. Crawford identified all the unambiguous records that have the same value of the task_type variable and computed the share of those records that were identified as non-TI. For example, there were 12 ambiguous and 123 unambiguous records with the task_type "CONTACT CUSTOMER". 2 out of 123 or 1.6% of the unambiguous records had been identified as non-TI. Based on this information Dr. Crawford allocated 1.6% of the prevailing wage hours in the 12 ambiguous records to non-TI work (implying that 98.4% was TI work.) The same method was applied to all of the ambiguous records.

Using the reallocated project data, Dr. Crawford then recalculated the damages last presented in his declaration of May 3, 2010, without changing the interest assumptions or the end date of the calculations. Also, pursuant to the Court's inquiry, he separately reported the damages between TI and non-TI. In doing so, he conservatively subtracted all of the "self-audit" payments from the non-TI damages. The resulting estimate of non-TI damages, including interest, and based on the assumption that all of the audit payments should be considered mitigation of damages related to non-TI work, is $9,789,795. Revised Tables 2, 4 (damages for TI and non-TI), and 4 Modified (damages for non-TI only) are attached as Exhibit 1 to his current declaration.

Plaintiffs now seek damages in the attached revised Table 4, for both TI and non-TI, totaling $15,921,114. If the Court rules against plaintiffs on the inclusion of testing and inspection, then plaintiffs request that the Court award $9,789,795 in non-TI damages to class members, in the amounts in Table 4 Modified.

<u>Agban Agban, week ending June 5, 2003</u> (Tr. 74-78). Dr. Crawford reports that the calculations for June 5, 2003 are correct, and provides the detail in the attached declaration.

<u>Duane Joseph Lenda, weeks ending August 11, 2005 and October 27, 2005.</u> The Court asked why, in the given weeks, Mr. Lenda had prevailing wage hours earned, but no prevailing wages due (Tr. 79-80, 87-88). As explained in Dr. Crawford's attached declaration, Mr. Lenda was one of the individuals who presented no damages because he was filtered out on the basis of job title. Dr. Crawford indicated, in columns 12, 13, 16, and 17 of the spreadsheet following the format of Table 1 of his report, the TI and non-TI hours earned as indicated in the project databases. Then, when calculating unpaid hours (columns 21-30), Dr. Crawford created a logical override in his computer program to report zeros to reflect that Mr. Lenda was not due damages because of his job title. Dr. Crawford was asked about this issue in his deposition and explained the matter (dep. 496, 522-23).

<u>Private entities listed in defendant's public works project data</u> (minute order of June 29, 2010). The Court asked for a more complete explanation as to why seemingly private entities are on plaintiffs' list of public projects. As stated in Dr. Crawford's attached declaration, and in his declaration of March 17, 2010 (¶ 6), he extracted more than 13,000 public works projects

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

from data provided by defendant in the project data. Abercrombie and Fitch and Bravo Cucina Italiano had a state or municipal value in the public works indicator. EGL Realty was identified as a public project in one or more of the source files from which the public works project list was derived. Despite the presence of a few private names, Dr. Crawford did not think it appropriate to override the SimplexGrinnell designation of public works projects. Defendant did not contest the selection of public works projects from its own data. *See* Dkt. 115-2, ¶ 64. The fourth entity mentioned by the Court, Stop & Shop, does not appear in the list of public works projects. When asked about Stop & Shop at oral argument (Tr. 114), the undersigned incorrectly assumed that Stop & Shop was on the list. Stop & Shop was the subject of a different issue, *viz.*, Dr. Crawford's underestimation of damages in instances where an employee was paid in an amount equal to or higher than the prevailing wage *rate*, on either a public or private project, and defendant was credited with that payment irrespective of whether there was public work identified in the project data that would trigger a damages award. *See* P. 5/3/10 *Daubert* Opp. at 37. In the Stop & Shop example cited in defendant's *Daubert* brief, the employee involved, Robert Mentz, had no damages recorded in Table 4 of Dr. Crawford's report.

Respectfully submitted,

Raymond C. Fay

cc: All counsel by ECF

3

145289.1