UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ROBERTO RAMOS, et al.,

                Plaintiffs,                    <u>Memorandum & Order</u>
                                                    07-CV-981 (SMG)

      -against-

SIMPLEXGRINNELL LP,

                Defendant.
------------------------------------------------------x
*Gold, S., United States Magistrate Judge*:

## INTRODUCTION

Plaintiffs, on behalf of themselves and other employees of defendant, bring this action seeking to recover unpaid prevailing wages for their work on various public works projects. The parties have filed cross-motions for summary judgment. Plaintiffs have also moved for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3). Finally, defendant has filed a *Daubert* motion seeking to exclude the testimony of plaintiffs' expert.

## FACTUAL BACKGROUND

Defendant SimplexGrinnell, formed in 2001, is a "leader[] in fire and life-safety systems" with offices throughout the United States, including New York. Zammitti Aff. ¶ 2, Docket Entry 111-4. More specifically, defendant manufactures, installs and services fire alarm and sprinkler systems and equipment. Zammitti Certification ¶ 2, Docket Entry 109-26; *see also* Hext 3/25/10 Aff. ¶ 2, Docket Entry 111-15 at 19-24. Over the years, defendant has entered into thousands of contracts with New York State and City agencies for installation, maintenance, repair and inspection of their safety systems. Zammitti Aff. ¶ 5.

Pursuant to New York law, public works contracts – i.e., contracts with state or local governmental agencies to perform construction, maintenance and repair of public buildings –

must provide that all laborers will be paid prevailing wages. N.Y. LABOR LAW § 220(3). Plaintiffs are fifteen current and former employees of defendant who performed electrical and sprinkler work, including installation, maintenance, inspection, testing, repairs, and replacement of fire alarms and security systems, on various public works projects throughout the state. Am. Compl. ¶ 18, Docket Entry 56. Plaintiffs contend that defendant failed to pay the named plaintiffs and the members of the putative class all the prevailing wages due to them for their work on public works projects.

## STATUTORY BACKGROUND -- NEW YORK LABOR LAW § 220

New York has a strong public policy of protecting its workers, rooted in a 1905 amendment to the state's Constitution.

> Labor of human beings is not a commodity nor an article of commerce and shall never be so considered or construed. No laborer, worker or mechanic . . . engaged in the performance of any public work[] shall be . . . paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used.

N.Y. CONST. art. I, § 17. Labor Law § 220, a codification of the Constitutional amendment, was enacted "to ensure that employees on public works projects are paid wages equivalent to the prevailing rate of similarly employed workers in the locality where the contract is to be performed." *Beltrone Constr. Co. Inc. v. McGowan*, 260 A.D.2d 870, 871-72 (3d Dep't 1999); *see also Cayuga-Onondaga Counties Bd. of Co-op. Educ. Servs. v. Sweeney*, 89 N.Y.2d 395, 401 (1996) (discussing briefly the legislative history of § 220 and the prevailing wage constitutional amendment). Today, "[i]t is well-settled that the primary purpose and intent of the prevailing wage law (Labor Law § 220) is to protect workers by ensuring that they have an effective remedy to secure the prevailing wage and supplements." *E. Williamson Roofing & Sheet Metal Co. v. Town of Parish*, 139 A.D.2d 97, 103 (4th Dep't 1988).

As noted above, under New York law, every public works contract must provide that all laborers employed on the public works project will be paid prevailing wages. N.Y. LABOR LAW § 220(3)(a). The Labor Law provides for administrative enforcement of its wage provisions. *Id.* § 220(7)-(9). *See also Brown v. Tomcat Elec. Sec. Inc.*, 2007 WL 2461823, at *3 (E.D.N.Y. Aug. 27, 2007) (describing the administrative scheme that an aggrieved employee may follow to pursue payment of alleged unpaid prevailing wages). There is no private right of action directly under the Labor Law "until an administrative determination in the employee's favor has been made and has gone unreviewed or has been affirmed." *Marren v. Ludlam*, 14 A.D.3d 667, 669 (2d Dep't 2005). The New York Court of Appeals, however, has held that an administrative claim is not the exclusive avenue for relief available to an employee denied prevailing wages, who may bring a common law breach of contract claim as the intended third-party beneficiary of a public works contract. *Fata v. S.A. Healy Co.*, 289 N.Y. 401, 404-07 (1943). *See also Quintanilla v. Suffolk Paving Corp.*, 2011 WL 1323033, at *7 (E.D.N.Y. Feb. 10, 2011).

### DISCUSSION

The various pending motions were, for all practical purposes, brought simultaneously. Because a ruling on any of the pending motions would affect issues raised by the others, the first question that arises is the order in which the motions should be addressed. I begin by ruling on the class certification motion. I next consider defendant's motion for summary judgment. I then turn to defendant's *Daubert* motion and finally address plaintiffs' motion for summary judgment.

#### 1.  Class Certification

Plaintiffs move for class certification of their prevailing wage claims pursuant to Rule 23(b)(3). Plaintiffs propose to certify a class defined as follows:

> [A]ll laborers, workmen and mechanics who furnished labor to
> SimplexGrinnell on non-federal public works projects in the State of New

York at any time from February 6, 2001[, or from July 14, 2001 for sprinkler work] until the final judgment in this matter, and who . . . have not been paid prevailing wages and benefits as required by law.[1]

Pl. Mem. 18;[2] *see also* Am. Compl. ¶ 7.

Plaintiffs bear the burden of establishing, by a preponderance of the evidence, the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) fairness and adequacy of representation. A plaintiff must also qualify under one of the subdivisions of Rule 23(b). *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997). A district court undertakes a "rigorous analysis" and "assess[es] all of the relevant evidence admitted at the class certification stage [to] determine whether each Rule 23 requirement has been met." *In re Initial Pub. Offering Secs. Litig.*, 471 F.3d 24, 33, 42 (2d Cir. 2006). Although a court deciding a certification motion should not evaluate aspects of the merits unrelated to the requirements of Rule 23, it must determine whether each of the rule's requirements has been satisfied, even when doing so involves resolving a question that also bears on the merits. *Id.* at 41. "The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' . . . and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361-62 (E.D.N.Y. 2009) (internal citations omitted).

---

[1] In their motion papers, plaintiffs propose a class of employees who "claim" they were not paid prevailing wages. Pl. Mem. 18. At oral argument, however, plaintiffs' counsel described the putative class as one that would "only include employees "who have not been paid prevailing wages due." Transcript of 6/28/10 Oral Argument ("Tr.") 5, Docket Entry 139.

[2] "Pl. Mem." refers to Plaintiffs' Memorandum of Law in Support of Motions for Class Certification and Summary Judgment, Docket Entry 109.

*a. Numerosity*

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Courts in the Second Circuit presume numerosity when the putative class has at least forty members. *Gortat*, 257 F.R.D. at 362 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Plaintiffs estimate that the class would be comprised of at least 400 and possibly more than 600 members based on an employee list produced by defendant. Pl. Mem. 21; Pl. R.56.1 ¶ 11; Pl. Ex. 1, Docket Entry 109-3 at 34-49 (identifying hundreds of employees with damages); Tr. 5-6 (noting that over 700 SimplexGrinnell employees worked on public sites).[3] Even defendant appears to concede that numerosity is met. Love 3/7/07 Decl. ¶ 5, Pl. Ex. 16 (declaring that defendant has employed more than 400 individuals to perform electrical work in New York during the relevant time period). Clearly, numerosity is satisfied.

*b. Commonality*

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality may be met even though individual circumstances differ, so long as class members' "'injuries derive from a unitary course of conduct.'" *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (quoting *Marisol*, 126 F.3d at 377).

Here, the requirement of commonality is satisfied. Plaintiffs' claim – that they and the proposed class members were denied prevailing wages by defendant – raises common questions of law and fact. Employees from defendant's various offices throughout New York have stated that, at least prior to 2007, they and their fellow SimplexGrinnell employees were paid the same

---

[3] "Pl. R.56.1" refers to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts, Docket Entry 109-85. Plaintiffs' exhibits 1-78 are found at Docket Entry 109, and plaintiffs' exhibits 79-108 are found at Docket Entry 118.

wages for their work on public and private projects and did not receive prevailing wages for their work on public job sites. Ford Decl. ¶¶ 13-14, Pl. Ex. 13; Hobbs Decl. ¶ 5, Pl. Ex. 14; Kuhlman Decl. ¶ 8, Pl. Ex. 15; Mitchell Decl. ¶¶ 11-12, Pl. Ex. 17; Stickney Decl. ¶¶ 10-12, Pl. Ex. 18; Ward Decl. ¶¶ 10-11, Pl. Ex. 19; Ziolkowski Decl. ¶¶ 9, 10, 12, Pl. Ex. 21. Plaintiffs have also submitted evidence indicating that defendant's payroll procedures were centralized. Bourgoin Dep. 59-61, Pl Ex. 56; Love Dep. 105-09, Pl. Ex. 64.

Other evidence further demonstrates defendant's practice, at least in some circumstances, of failing to pay prevailing wages. *See, e.g.*, *id*. at 75-76 (noting that the Newburgh office failed to pay prevailing wages for certain work performed in Westchester County and that defendant then made back payments to its employees); *id*. at 221-27 (reviewing extracts from defendant's computer records that indicate that various public projects were not "flagged" properly to ensure that employees were paid prevailing wages); Pl. Ex. 36 (reflecting a finding by the New York State Department of Labor that defendant "failed to notify workers of prevailing rates and [prevailing wage] projects"); Pl. Ex. 47 (indicating that defendant failed to pay prevailing wages for labor performed in connection with certain public works projects in Suffolk County from 2003 through 2005); Hext Dep. 72 (testifying that defendant conducted a second audit and made additional back payments for Suffolk County work performed after 2005); Pl. Ex. 49 (2007 letter from defendant conceding that it failed to submit certified payroll records for its work on a particular public works project); Hext Dep. 20 (noting that defendant also had a prevailing wage suit pending against it in California); *id*. at 109 (testifying that defendant began testing a prevailing wage compliance program only in November, 2006).

Although not proffered by plaintiffs for this proposition, the evidence before the Court also includes a concession by defendant that, from 2004 to 2008, payments of prevailing wages

to its New York City employees could be made only by manually overriding defendant's general payroll system. Hext 3/24/10 Aff. ¶ 11 (filed under seal as Docket Entry 110-4) (stating that "[e]xcept in rare circumstances, SimplexGrinnell's New York City office used the manual override process as its *exclusive* means of paying prevailing wages during the period from at least April, 2004 through late-2008"); *see also* Pl. R.56.1 ¶ 25 (stating that defendant's payroll process was uniform throughout New York); Def. Response ¶ 25, Docket Entry 115-2 (plaintiffs' R.56.1 ¶ 25 is undisputed). A system of manual overrides is inherently likely to fail to pay all prevailing wages due because it depends upon the employees' knowledge of their right to seek the wage differential, the submission by employees of additional paperwork seeking prevailing wages, and accurate processing of employee requests by the defendant. There is also a dispute between the parties as to whether defendant's employee time sheets, particularly prior to 2006, even provided a space for an employee to indicate an entitlement to prevailing wages.[4] *See, e.g.*, Zammitti Dep. 110-15, Pl. Ex. 72 (discussing a sample 2004 time sheet that failed to include such a space); Pl. R.561. ¶ 26; Def. Response ¶ 26 (citing a 2005 timesheet that permitted an employee to indicate he should be paid prevailing wages).

According to defendant, its various offices used different procedures for paying prevailing wages. Defendant's prevailing wage manager, hired in 2005, testified at her deposition that "some offices did and some offices did not" pay prevailing wages for service and maintenance work performed on public projects. Hext Dep. 47, Pl. Ex. 61. Defendant argues that its lack of uniform procedures defeats plaintiffs' showing with respect to commonality. However, defendant's various New York regional offices apparently did have one policy in common, at least according to plaintiffs' allegations: a failure to adopt a regularly employed and

---

[4] The parties also dispute whether pay stubs properly noted the payment of prevailing wages. *See* Pl. R.56.1 ¶ 27; Def. Response ¶ 27.

7

reliable method of distinguishing covered work and ensuring that prevailing wages were paid to employees for covered work they performed. To the contrary, according to plaintiffs' allegations, SimplexGrinnell's various offices paid little or no heed to defendant's obligation to pay prevailing wages for covered work. I therefore conclude that, while plaintiffs' claims may raise individualized questions regarding the number of covered hours that a specific employee worked and the prevailing wage the employee was entitled to be paid, these questions "will not predominate over the questions of law and fact that are relevant to all members of the purported class." *Gortat*, 257 F.R.D. at 362. *See also Marisol*, 126 F.3d at 376; *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 150 (E.D.N.Y. 1996) ("Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that *all* questions of law or fact raised be common.") (internal quotation marks omitted). Rather, these individual questions "relate primarily to the level of damages, if any, owing to each individual," and not to the question of liability. *Noble*, 224 F.R.D. at 343 (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001)).

Indeed, and of significance with respect to commonality as well as each of the other Rule 23 requirements discussed below, claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the prerequisites for class certification. *See, e.g., Jankowski v. Castaldi*, 2006 WL 118973, at *2-3 (E.D.N.Y. Jan. 13, 2006) (finding commonality among the plaintiffs who alleged that they had been denied overtime wages pursuant to defendants' policy); *Noble*, 224 F.R.D. at 343 (finding the commonality requirement met where "each potential class member was employed by [defendant] . . ., was required to work in excess of forty hours each week, and was not properly

compensated for this additional labor"). In this case, as in *Eldred v. Comforce Corp.*, 2010 WL 812698, at *19 (N.D.N.Y. Mar. 2, 2010),

> [t]he class definitions at issue . . . include all . . . employees who allegedly . . . were not paid prevailing wage[s] on state-funded contracts, . . . which resulted from the implementation of allegedly unlawful policies by their common employer. The predominant question raised is whether such a policy existed, and not whether any individual suffered its consequences on a particular job.

*See also Cuzco v. Orion Builders*, 262 F.R.D. 325, 334 n.20 (S.D.N.Y. 2009) (finding that defendant's pay practices were common to the class and thus met the commonality requirement).

The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. _, 2011 WL 2437013 (2011), issued earlier this week, does not command a different result. In *Wal-Mart*, the Court considered whether plaintiffs had bridged the "conceptual gap" between an individual's claim of injury and the existence of a class of persons who have suffered the same injury. 2011 WL 2437013, at *8. The Court held that the gap could be bridged with "significant proof that [defendant] operated under a general policy of discrimination." *Id*. (internal quotation marks omitted). The Court found that such proof was "entirely absent" and emphasized that plaintiffs did not allege "any express corporate policy" of discrimination, *id.* at *4, and that the challenged pay and promotion decisions were "generally committed to local managers' broad discretion, which [was] exercised in a largely subjective manner." *Id.* at *3. The relevant facts and circumstances in *Wal-Mart* have little bearing here. As indicated above, plaintiffs have come forward with significant proof that defendant routinely failed to account for labor performed on public works projects and pay prevailing wages for covered work. Moreover, there is little discretion or subjective judgment in determining an employee's right to be paid prevailing wages; the right arises automatically, by operation of law, provided the nature of the construction project and the type of labor performed fall within the scope of New York Labor Law § 220. In

addition, whereas in *Wal-Mart* defendant had an "announced policy" prohibiting discrimination, *id*. at *8, defendant here has not come forward with evidence of an expressed uniform policy that ensured the payment of prevailing wages to its employees when due. Finally, although the efforts of the *Wal-Mart* plaintiffs to prove their case with statistical evidence failed, plaintiffs here have come forward with class-wide proof culled from defendant's electronic data that, as discussed in greater detail below, is sufficiently reliable to be presented at trial.

Similarly, the cases cited by defendant holding that the commonality requirement was not met are distinguishable because in those cases liability was not susceptible to class-wide proof. Def. Opp. 20.[5] For example, in *Dobson v. Hartford Financial Services Group, Inc.*, 342 Fed. Appx. 706, 709 (2d Cir. 2009), the defendant insurer's liability hinged on whether its delay in providing disability benefits was "unreasonable." The Court held that this question could not be resolved with class-wide proof because "[t]he duration of a 'reasonable time' to review a claim might vary with such factors as the complexity of the facts, the need for follow-up to verify the proofs, and the difficulty of the determination." *Id.* at 709. Defendant's reliance on *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002), is similarly misplaced. In *Moore*, plaintiffs' class claims were based on oral misrepresentations that undoubtedly varied among members of the putative class. The Court specifically held that, while fraud claims based on individualized representations are not properly certified for class treatment, fraud claims that rest on uniform representations are. Here, as discussed above, plaintiffs have put forth evidence of defendant's general payroll practices as part of their proof that they were denied prevailing wages. For all these reasons, I find that plaintiffs meet the commonality requirement of Rule 23.

---

[5] "Def. Opp." refers to Defendant's Memorandum of Law in Opposition to Plaintiffs' Motions for Class Certification and Summary Judgment, Docket Entry 115.

c.  *Typicality*

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Marisol*, 126 F.3d at 376 (internal citations omitted).  "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate" the analysis of each.  *Id*.

Named plaintiffs allege that they each performed similar work for defendant, were subject to the same payroll procedures of defendant, and, like other members of the class, were not paid prevailing wages to which they were entitled.  Pl. R. 56.1 ¶¶ 12, 13, 16-28; Pl. Mem. 22-23.  Employees from defendant's offices throughout the state make allegations similar to those of the named plaintiffs.  *See* Ford Decl. ¶¶ 13-14, Pl. Ex. 13; Hobbs Decl. ¶ 5, Pl. Ex. 14; Kuhlman Decl. ¶ 8, Pl. Ex. 15; Mitchell Decl. ¶¶ 11-12, Pl. Ex. 17; Stickney Decl. ¶¶ 10-12, Pl. Ex. 18; Ward Decl. ¶¶ 10-11, Pl. Ex. 19; Ziolkowski Decl. ¶¶ 9, 10, 12, Pl. Ex. 21.  Defendant does not assert that any of the named plaintiffs are subject to unique defenses that would destroy typicality.  Def. Opp. 16-37; *cf. Noble*, 224 F.R.D. at 343 (noting that one of the named plaintiffs may be exempt from the overtime wage laws and concluding that his claims are not typical of the class).

Although named plaintiffs and putative class members may differ with respect to job classification, office location, and the amount of testing and inspection work each performed, these differences do not destroy typicality.  Defendant notes that all of the named plaintiffs work out of its New York City office, and that as a result there are no representatives from upstate New York or Long Island.  Def. R.56.1 ¶ 4, Docket Entry 111-5.  These differences – job

classification and locality – are not sufficiently significant to plaintiffs' claims to undermine typicality, particularly because plaintiffs challenge payroll practices defendant employed throughout the state. Indeed, as will be discussed below in connection with defendant's *Daubert* motion, defendant's alleged liability to the members of the class may be determined by examining the same electronic databases. I therefore find that the named plaintiffs' claims are sufficiently typical of those of putative class members to satisfy Rule 23(a)(3), with the exception discussed below of any named plaintiff who is not owed any prevailing wages.

    *d. Adequate Representation*

    Rule 23(a)(4) requires named plaintiffs to demonstrate that they will fairly and adequately protect the interests of the class. Here, with the exception noted below, the interests of the named plaintiffs are aligned with those of the proposed class members, and there is no reason they could not serve as adequate class representatives. *See Gortat*, 257 F.R.D. at 365. Defendant's argument that each of the named plaintiffs has no personal stake in the claims for monetary damages of putative class members, Def. Opp. 36, would apply in virtually any class action. Defendant has not suggested that the claims of the named plaintiffs are in any way antagonistic to those of the putative class members, or that the representatives lack sufficient moral character. *See Noble*, 224 F.R.D. at 344. Moreover, according to plaintiffs' expert's analysis, the claims of the named plaintiffs cover a range of potential damage awards.[6] It appears, however, that at least one of the named plaintiffs is not owed any prevailing wages. *See* Docket Entry 149-2 (calculating zero damages for named plaintiff Agban). I conclude that any

---

[6] For example, according to Dr. Crawford's most recent damages calculations, class representatives Ramos and Rodriguez claim substantial non-testing and inspection damages, while named plaintiffs Smith and Estrella each have less than one thousand dollars in damages, after accounting for the self-audit payments defendant has already made. Docket Entry 149-2.

named plaintiff who was paid all wages he earned does not have a claim typical of those of the absent class members and may not serve as a class representative.[7]

I now turn to the adequacy of class counsel. At the time that plaintiffs filed their motion, they were represented by law firms Constantine Cannon and Berenbaum Menken. In October, 2010, I granted Constantine Cannon's motion to be relieved. Plaintiffs continue to be represented by Raymond Fay, formerly of Constantine Cannon and now of Mehri & Skalet. Accordingly, plaintiffs seek to have Berenbaum Menken and Mehri & Skalet appointed as co-lead class counsel pursuant to Rule 23(g). Pl. Mem. 27 n.22. It appears that defendant does not challenge the appointment of Berenbaum Menken and Raymond Fay as counsel for the class. Def. Opp. 36-37. Plaintiffs, however, have not presented any information about Mehri & Skalet or whether its qualifications meet Rule 23(g). Nonetheless, I take judicial notice of the public information filed on the firm's website, http://www.findjustice.com.

When determining whether proposed counsel should be appointed to represent the class, a court must consider

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A).

Berenbaum Menken and Mehri & Skalet have extensive class action and labor law experience. Pl. Ex. 31; http://www.findjustice.com. Berenbaum Menken has represented the plaintiffs since it filed this action in February of 2007 and has thus invested a substantial amount

---

[7] I defer any determination as to which specific plaintiffs' claims are not typical until after Dr. Crawford revises his report in accordance with my rulings made herein.

of time and effort investigating and prosecuting plaintiffs' claims. *See* Docket Entry 1. Both of the lead attorneys, Bruce Menken of Berenbaum Menken and Raymond Fay of Mehri & Skalet, have more than twenty years of legal experience and are more than capable of representing the class. Pl. Exs. 31, 32; *see also* http://www.findjustice.com. Accordingly, Berenbaum Menken and Mehri & Skalet are appointed class counsel pursuant to Rule 23(g).

        *e.   Rule 23(b)(3) Requirements*

        Plaintiffs seek certification under Rule 23(b)(3), which requires a demonstration that "questions of law or fact common to class members predominate" over questions affecting only individual class members. The "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 136 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted). The focus of the predominance inquiry is on defendant's liability, not on damages. *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 148 (S.D.N.Y. 2002); *see also In re Visa*, 280 F.3d at 139 (noting that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues"); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("The individuation of damages in . . . class actions is rarely determinative under Rule 23(b)(3)."). "The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana*, 201 F.R.D. at 89.

Here, common questions of law and fact relevant to all class members predominate over individualized issues. True, the putative class members earned prevailing wages at different rates, some worked more hours than others, and some are electricians and others are sprinkler fitters. However, these differences do not predominate over the main issue: whether defendant systematically failed to pay its employees the prevailing wages due them. As discussed above, defendant failed to implement any routine or automated system for paying prevailing wages, instead relying on manual overrides, particularly prior to 2007. Accordingly, I find that plaintiffs have shown that common questions of law or fact predominate over any individualized issues. *See Bolanos*, 212 F.R.D. at 148 (noting that "a uniform practice or scheme [by defendant] to deprive [its] employees of overtime wages . . . [is] a significant step towards establishing liability to all class members").

In fact, and also as discussed above, numerous courts have found that wage claims are especially suited to class litigation – perhaps "the most perfect questions for class treatment" – despite differences in hours worked, wages paid, and wages due. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007). *See*, *e.g.*, *Eldred*, 2010 WL 812698, at *19 (granting plaintiffs' motion for class certification for their prevailing wage claim); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49 (E.D.N.Y. 2010) (holding that "differences among class members as to the number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification."); *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *4-5 (E.D.N.Y. Apr. 9, 2010); *Cuzco*, 262 F.R.D. at 334-35; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008) (rejecting defendant's argument that individual issues predominate and finding that defendant's common,

uniform policies established predominance); *Barone v. Safway Steel Prods., Inc.*, 2005 WL

2009882, at *6 (E.D.N.Y. Aug. 23, 2005) (finding that common issues predominate in a

prevailing wage class action); *Noble*, 224 F.R.D. at 345 (concluding that, "[a]lthough

determinations as to damages . . . will require individualized findings, common liability issues

otherwise predominate"); *Bolanos*, 212 F.R.D. at 148 (holding "different . . . departments kept

track of overtime using different methods, differences in departments, job duties, and even

factual variations in plaintiffs' claims should not defeat class certification . . . where all plaintiffs

claim they were denied overtime"); *Ansoumana*, 201 F.R.D. at 89 (certifying a class alleging

violations of the New York Minimum Wage Act). Similarly, New York state courts have

repeatedly approved class certification of prevailing wage claims against an employer. *See*

*Galdamez v. Biordi Constr. Corp.*, 50 A.D.3d 357 (1st Dep't 2008); *Brady v. Canea Mare*

*Contracting, Inc.*, 34 A.D.3d 512 (2d Dep't 2006); *Pesantez v. Boyle Envtl. Servs., Inc.*, 251

A.D.2d 11 (1st Dep't 1998); *Nawrocki v. Proto Constr. & Dev. Corp.*, 2010 WL 1531428, at *6

(N.Y. Sup. Ct. Apr. 7, 2010), *aff'd* 82 A.D.3d 534 (1st Dep't 2011); *Pajaczek v. CEMA Constr.*

*Corp.*, 18 Misc.3d 1140(A), at *2 (N.Y. Sup. Ct. 2008). Indeed, in *Jara v. Strong Steel Door,*

*Inc.*, 2008 WL 3823769 (N.Y. Sup. 2008), a case that defendant repeatedly cites in its

memorandum in support of summary judgment, the court certified a prevailing wage class,

finding that "[t]he only individual peculiarities among class members relate to the amount of

damages recoverable depending on the number of hours worked and the prevailing wage rates

applicable to each worker's trade. Such peculiarities are not an impediment to class

certification." *Id.* at *13.

Defendant relies on various cases holding that class certification should be denied unless

plaintiffs can establish liability on a class-wide basis using common proof. Def. Opp. 22 n.19.

While this general proposition may be correct, the facts of the cases defendant cites are readily distinguished from those presented here. For example, in *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467-68 (4th Cir. 2006), an antitrust action claiming defendant charged monopoly prices, the court held that individualized proof would predominate because some putative class members negotiated with the defendant over the prices they paid. Similarly, in *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234-35 (11th Cir. 2000), a discrimination case, the Court of Appeals held that class certification was properly denied because the claim required "every member of the class" to present individualized proof of the defendant's intentional discrimination. In this case, on the other hand, if plaintiffs establish that defendant had a practice or policy of failing to pay prevailing wages, defendant's liability to all class members will be established.

Rule 23(b)(3) also requires a finding that a class action is superior to other means of adjudication. As noted above, questions that are relevant to all members of the class predominate over individualized issues, supporting the efficiency of proceeding in this case in the form of a class action. Moreover, a class action is the most efficient way to resolve the claims at issue here; although defendant has raised questions about the reliability of plaintiffs' expert's report, it appears that plaintiffs may calculate class damages by applying a common formula to data culled from defendant's electronic records. *See* Crawford Rpt. ¶¶ 20-50.[8]

Defendant contends that many putative class members are allegedly owed significant damages, at least according to plaintiffs' expert's calculations, and that "courts regularly deny certification" when individual claims are relatively large. Def. Opp. 34. The court is not aware of any precedent instructing that a class should not be certified on the sole ground that some of the class members' claims are substantial. In the cases that defendant cites, Def. Opp. 34, the

---

[8] "Crawford Rpt." refers to the Third Revised Expert Report of David L. Crawford, PhD, Docket Entry 109-3.

courts denied certification on various grounds – for lack of commonality and typicality, and "overwhelming" individual issues – and *one* factor in the decision was the fact that individual claims had a significant dollar value. *See Smith v. Texaco, Inc.*, 263 F.3d 394, 416 (5th Cir. 2001) (denying class certification of discrimination claims). Although some putative class members in this case may have damages of over $100,000, Def. Opp. 35, that fact, standing alone, is insufficient to defeat class certification. If any class members with such large claims prefer to pursue them individually, they may opt out of the class.

Finally, some of the claims of absent class members are small, and some of the absent class members are currently employed by the defendant. These facts support class certification as well. For these reasons, I conclude that a class action is a superior method for litigation of these claims. Accordingly, plaintiffs' motion for class certification of their prevailing wage claims pursuant to Rule 23(b)(3) is granted.

## 2. **Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on essentially seven grounds: 1) on all breach of contract claims other than those claims that rely on the twenty-nine contracts that plaintiffs have identified, 2) on claims for time spent testing and inspecting, 3) on claims for which plaintiffs' expert calculated zero damages, 4) on all New York City and Long Island claims, 5) on claims for work in certain counties on the ground that the National Labor Relations Act preempts those claims, 6) on plaintiffs' claims for quantum meruit and unjust enrichment, 7) on plaintiffs' overtime claims, and 8) on plaintiffs' fifth cause of action.

*Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). An issue of fact is material if it "might affect the outcome of the

suit under the governing law," and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). In reaching a summary judgment determination, the court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). The moving party bears the initial burden of establishing that there are no genuine issues of material fact; once he does so, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations, however, are insufficient, and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

### a. Breach of Contract

Plaintiffs, as third party beneficiaries of defendant's public works contracts, allege that defendant breached *thousands* of public works contracts when it failed to pay its employees prevailing wages. *See* Am. Compl. ¶ 24; Table of SimplexGrinnell Public Works Projects ("Table"), Docket Entries 109-4, 109-5, 109-6, 109-7 (identifying 13,409 public works projects entered into by defendant during the relevant time period). In the course of discovery, though, plaintiffs obtained only twenty-nine actionable public works contracts from defendant.[9] Defendant contends that plaintiffs may not maintain their breach of contract claims without submitting the contracts in evidence. Def. SJ Mem. 18-21. Plaintiffs respond that the thousands

---

[9] Plaintiffs obtained thirty-nine contracts but defendant states that ten of them are "not actionable" for various reasons. SimplexGrinnell's Memorandum of Law in Support of its Motion for Summary Judgment ("Def. SJ Mem.") 9, Docket Entry 111; Capozzola Aff. ¶ 14, Docket Entry 111-6. For example, three of the documents were bid documents; one contract predated the actionable period in this suit; one was a federal contract; and one contract was with an entity other than defendant. Capozzola Aff. ¶¶ 14-21.

of actual contracts are not needed because New York state law requires that all public works contracts contain a prevailing wage provision. Pl. Opp. 6-13.[10] With respect to the projects for which they do not have contracts, plaintiffs intend to rely primarily upon this statutory requirement to prove their contractual entitlement to prevailing wages. Pl. Mem. 39-41; Pl. Reply 25-27.[11]

In light of the particular circumstances of this case, I conclude that defendant may not obtain summary judgment on plaintiffs' third-party beneficiary claims on the grounds that plaintiffs will not be offering the underlying contracts in evidence. I reach this decision for the reasons set forth below, and primarily because defendant was required by law to include a prevailing wage provision in each of its public works contracts.

I begin from the premise that New York Labor Law explicitly provides that all construction contracts entered into by a public entity, including those for maintenance and repair of public buildings, "shall contain a provision that each laborer, workman or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the wages herein provided." N.Y. LABOR LAW § 220(3)(a). In short, the law mandates that defendant's public works contracts contain prevailing wage provisions.

When parties enter into a contract, they are "presumed or deemed to have contracted with reference to" applicable existing laws. 11 WILLISTON ON CONTRACTS § 30:19 (4ᵗʰ ed.). *See also Resolution Trust Corp. v. Diamond*, 45 F.3d 665, 673 (2d Cir. 1995) ("When parties enter into a contract, they are presumed to accept all the rights and obligations imposed on their relationship by state (or federal) law."); *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 193 (2001) ("When

[10] "Pl. Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Docket Entry 119.

[11] "Pl. Reply" refers to Plaintiffs' Reply Memorandum in Support of Motions for Class Certification and Summary Judgment, Docket Entry 126.

evidence is lacking that both parties intended to violate the law, a contract . . . should be construed in favor of its legality."); *Rodgers v. Coler*, 166 N.Y. 1, 9 (1901) ("If the law is valid, it governs the contract and the rights of the parties, whether actually incorporated into the writing or not, since all contracts are assumed to be made with a view to existing laws on the subject."), *quoted in Fata*, 289 N.Y. at 406. "Under th[e] presumption of incorporation, valid applicable laws existing at the time of the making of the contract enter into and form a part of the contract as fully as if expressly incorporated in the contract" and become "implied terms of the contract, regardless of whether the agreement refers to the governing law." WILLISTON § 30:19. *See also Farmers' & Merchants' Bank of Monroe v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 660 (1923) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms."); *2 Tudor City Place Assocs. v. 2 Tudor City Tenants Corp.*, 924 F.2d 1247, 1254 (2d Cir. 1991) ("Laws and statutes in existence at a time a contract is executed are considered a part of the contract, as though they were expressly incorporated therein."); *Ronnen v. Ajax Elec. Motor Corp.*, 88 N.Y.2d 582, 588 (1996) ("We have held that the law in force at the time [an] agreement is entered becomes as much a part of the agreement as though it were expressed or referred to therein, for it is presumed that the parties had such law in contemplation when the contract was made and the contract will be construed in the light of such law.") (alteration in original) (internal quotation marks omitted). Thus, and in particular absent any evidence to the contrary, I presume that all of defendant's public works contracts either explicitly or implicitly provide for payment of prevailing wages as required by Labor Law § 220. *See also* Manhattan and Bronx Apple contract ¶ 8.2.1, Pl. Ex. 6 (stating that the "parties agree that each and every provision of federal or state or local law . . . required to be inserted in this Contract, is

deemed by this reference to be so inserted"); *id.* ¶ 8.3 (requiring defendant to act "in strict conformity with all applicable federal, state, and local laws").

Moreover, the Federal Rules of Evidence provide that plaintiffs may rely on evidence other than the contracts themselves to establish their contents. Federal Rule of Evidence 1004 provides that secondary evidence may be admitted to establish the contents of a contract. Although Rule 1002 generally limits proof of the contents of a document to the "original writing," Rule 1004 permits other evidence, at least in certain circumstances, to establish the document's contents. Plaintiffs rely on subdivision 3 of Rule 1004, which permits a party to rely upon evidence other than a document itself to prove its contents when the original document is in the possession of the party's opponent. Here, defendant has, or should have, access to the public works contracts at issue, or at least copies of them, and plaintiffs have alerted defendant that they intend to prove that the contracts call for payment of prevailing wages by pointing out that § 220 requires that they do. Pls. 6/22/10 Ltr., Docket Entry 136, at 3.

Secondary evidence of a document's contents may be admitted even when the original is not in the possession of an adversary; "if failure to produce the original is satisfactorily explained, secondary evidence is admissible." FED. R. EVID. 1004 Advisory Committee Note to 1972 Proposed Rules. "[I]nconvenience of producing original writings can of course furnish satisfactory explanation of non-production and permit proof of contents by secondary evidence. One does not have to uproot a tombstone to prove in court the inscriptions which it bears." JACK B. WEINSTEIN ET AL., EVIDENCE 226 (9th ed. 1997) Here, the significant burden that would be imposed on plaintiffs if they were required to obtain 13,409 original contracts, or even the burden of obtaining copies, when it is essentially undisputed that the contracts must, by law,

contain a prevailing wage provision, sufficiently justifies the use of secondary evidence to prove the terms of the contracts.

Rule 1004 also permits a party to establish the contents of a writing with secondary evidence where the document relates only to a collateral matter. FED. R. EVID. 1004(4). Courts have applied this provision "when trouble, expense or tediousness of adducing primary documentary evidence outbalances its significance in the case." EVIDENCE 227 (citing cases). *See also* WEINSTEIN'S FEDERAL EVIDENCE § 1004.41 (2d ed.) (noting that the Rule permits the "exercise of common sense" and that "as a matter of practical judicial administration, the court is justified in weighing the cost of production of an original against its importance and the litigant's financial capacity").

In this case, the burden of production substantially outweighs the significance of the contracts. When deciding whether or not a document is collateral, courts consider "the centrality of the document to the principal issues of the litigation; the complexity of the relevant features of the document; and the existence of [a] genuine dispute as to its contents." KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 239 (6th ed. 2006). At first blush, it may seem anomalous to say that the contracts are collateral in a case where plaintiffs' claims rest on the contention that they were breached. Here, though, the central issue is the amount of wages that plaintiffs and putative class members were paid and how much they should have been paid in prevailing wages. The contracts are essentially necessary only to establish for which projects, and thus which hours, the class should be paid prevailing wages. To that end, defendant does not dispute that the 13,409 projects identified in the Table are public works projects, nor does defendant contend – at least for purposes of the present motions – that it was not obligated to pay prevailing wages for at least some of the work done on those projects. *See* Def. Response ¶ 64, Docket

Entry 115-2.  The contracts are not even needed to determine the prevailing wage rates.  Pursuant to § 220, the "fiscal officer" – either the Commissioner of Labor or the Comptroller for the City of New York – annually sets the prevailing wage rates for the state or the city, respectively. N.Y. LABOR LAW § 220(5)(a).[12]

Finally, the prevailing wage provision is not complex or difficult to understand; in fact, the provisions in the exemplars that plaintiffs provided are substantially similar and straightforward.  *See*, *e.g.*, Manhattan and Bronx Apple contract ¶ 8.5, Pl. Ex. 6 (requiring that the contractor pay prevailing wages, if applicable); Brooklyn Apple contract ¶ 8.05, Pl. Ex. 7 (same); Cayuga Correctional contract, Pl. Ex. 8 (providing that if the work is a "public work," defendant must comply with prevailing wage requirements); OMH contract App. A ¶ 6, Pl. Ex. 10 (noting that "[i]f this is a public work contract," defendant must pay "at least the prevailing wage rate"); Albany contract Amend. #1, Pl. Ex. 11 (including a provision requiring payment of prevailing wages and attaching wage schedule); Onondaga contract, Pl. Ex. 12 ("The provisions of Section 220 of the NY Labor Law are deemed part of every purchase order with the same force and effect as if set forth at length.").

In short, although defendant does not admit that all of its public works contracts contain the mandatory prevailing wage provision, there is no real dispute as to the contents of the contracts or the specific language of the prevailing wage provisions.  There is no need to parse the particular language of any one contract's prevailing wage terms to determine whether defendant breached it; the provision is either present or not.  There is no need to refer to the contract to determine the wage rate to be paid; that amount is published by the Commissioner or Comptroller.  Accordingly, the contracts are collateral, and therefore secondary evidence – i.e.,

---

[12] The wage rate schedules referred to in the text are published on the state's and city's websites.  *See http://www.labor.ny.gov/workerprotection/publicwork/PWContents.shtm* (providing links to current and past prevailing wage schedules); *http://www.comptroller.nyc.gov/bureaus/bll/schedules.shtm* (same).

evidence of the statutory mandate that prevailing wages be paid on public construction projects – may be admitted to support the inference that all of defendant's public works contracts contain prevailing wage provisions. Defendant, of course, is free to challenge whether the class is entitled to prevailing wages on any particular project by submitting any contracts that it contends provide that prevailing wages need not be paid.

Plaintiffs' contention that the contracts need not be produced because the law mandates that they contain prevailing wage provisions does appear to raise a question of first impression. There does not seem to be any case law supporting a plaintiff's right to proceed on a breach of a public works contract as a third-party beneficiary without offering the contract in evidence. Rather, it seems that plaintiffs asserting their rights to prevailing wages as third-party beneficiaries have typically submitted the underlying contracts to the courts hearing their claims. *See*, *e.g.*, *Samborski v. Linear Abatement Corp.*, 1998 WL 474069, at *3 (S.D.N.Y. Aug. 10, 1998) (referring to a specific provision of the contracts in issue requiring payment of prevailing wages); *Cox v. NAP Constr. Co., Inc.*, 10 N.Y.3d 592, 601-02 (2008) (same); *Fata*, 289 N.Y. at 405 (noting that the contract expressly included a prevailing wage provision)[13]; *Wysocki v. Kel-Tech Constr. Inc.*, 46 A.D.3d 251, 251 (1st Dep't 2007) (finding that plaintiffs' claims were not preempted, "[a]ssuming, as plaintiffs allege, that the public works contracts at issue, which none of the parties submitted to the motion court, incorporate the requirements of Labor Law § 220").

In fact, some courts have dismissed breach of contract wage claims for failing to attach the contract or at least identifying the breached contractual provision. *See Winsch v. Esposito Bldg. Specialty, Inc.*, 48 A.D.3d 558, 559 (2d Dep't 2008) (affirming dismissal of complaint for

---

[13] Moreover, language in *Fata*, the seminal Court of Appeals case permitting prevailing wages to be sought by workers as third-party beneficiaries, suggests that the contract must contain the prevailing wage provision before a breach of contract claim may be brought: "[W]e assume, *arguendo*, that if the obligation of the defendant to pay wages 'not less than the prevailing rate' existed only by fiat of the Legislature, the remedy provided by the Legislature for violation of the obligation it has created would be exclusive." 289 N.Y. at 404.

failure to identify the contractual provisions allegedly breached); *Maldonado v. Olympia Mech. Piping & Heating Corp.*, 8 A.D.3d 348 (3d Dep't 2004) (citing *Fata* and noting that workers may bring a breach of contract claim "when the contract between the employer and the municipality *expressly* provides" for the payment of prevailing wages) (emphasis added); *Jara v. Strong Steel Door Inc.*, 20 Misc.3d 1135(A), at *10 (N.Y. Sup., Kings County, 2008) (dismissing those causes of action alleging a breach of contract where plaintiff failed to specify the actual contracts and terms allegedly breached). However, these cases are distinguishable. For example, in *Jara*, plaintiffs failed to identify the specific contractual provisions breached, despite the court's prior order to plaintiffs to specify the contracts and terms at issue in their forthcoming amended complaint, and the court therefore held that plaintiffs failed to comply with its order "to provide the court and the parties with notice of the specific 'transactions, occurrences, or series of transactions or occurrences, intended to be proved.'" *Jara*, 20 Misc.3d 1135(A), at *10 (quoting *Winsch*, 48 A.D.3d at 559); *see also* Tr. 10-11 (distinguishing *Jara*). *Jara*, therefore, concerns the adequacy of plaintiffs' pleading, not the sufficiency of their evidence. Here, in contrast, plaintiffs have identified the contractual terms at issue – § 220's prevailing wage provisions – and on which public works contracts they seek prevailing wages. *See* Table. Moreover, the aspect of the holding in *Jara* cited above is at least arguably *dicta*; the Court went on to hold that plaintiff's claim would be subject to dismissal on summary judgment even if properly pled because of compelling documentary evidence that plaintiff did not work at the site in question. Defendant also relies on *Brown*, 2007 WL 2461823, at *6 n.4. In *Brown*, plaintiffs' attempt to assert a third-party beneficiary theory was rejected because their employer was not a party to a contract requiring payment of prevailing wages. Here, plaintiffs allege – and defendant has not disproved – that defendant *did* enter into contracts requiring that prevailing

wages be paid, but merely seek to prove that fact by means other than admitting into evidence the contracts themselves.

In any event, it is clear that New York law requires public works contracts like those at issue here to include prevailing wage provisions. It is equally clear that plaintiffs and the putative class are the intended third-party beneficiaries of these prevailing wage provisions. *See Fata*, 289 N.Y. at 405 ("It cannot be doubted that provisions requiring the contractor to pay [prevailing] wages are . . . inserted in the contract . . . *for the benefit of the laborers* . . . .") (emphasis added); *see also Bucci v. Village of Port Chester*, 22 N.Y.2d 195, 201 (1968) (reaffirming that "section 220 must be construed with the liberality needed to carry out its beneficent purposes" – "the protection of workingmen" with respect to their right to be paid prevailing wages).

For all these reasons, defendant's motion for summary judgment on the grounds that plaintiffs have failed to submit the intended public works contracts underlying their claims is denied. This ruling does not preclude defendant from submitting the contracts or other proof in evidence in an effort to establish that the contracts are not public works contracts, that they do not provide for payment of prevailing wages, or that they are otherwise not actionable.

*b. Testing and Inspection*

Next, defendant moves for summary judgment on its liability with respect to plaintiffs' claims for testing and inspection work. New York's prevailing wage requirement applies only to work performed in the construction, maintenance, and repair of public buildings. Defendant argues that testing and inspection is not construction, maintenance, or repair work and are – or at least were during the time relevant to plaintiffs' complaint – outside the parameters of work covered under § 220.

Beginning in January 2008, defendant met with officials in the Department of Labor ("DOL") concerning whether fire alarm testing and inspection ("TI") work is covered under prevailing wage laws. Def. R.56.1 ¶ 37. On December 31, 2009, the Department of Labor issued an official opinion letter ("DOL Opinion Letter") stating that testing and inspection falls within the coverage of prevailing wage laws. Pl. Ex. 3. The DOL Opinion Letter, however, further states that "because there has been much confusion in the past about the Departments [sic] position as to the applicability of the prevailing wage law to this work, this opinion shall be applied prospectively to contracts that are put out for bid after January 1, 2010, unless a previous contract actually required the payment of prevailing wages for this work." *Id*. at 3.

Defendant contends that the language in the DOL Opinion Letter limiting its application to contracts put out for bid after January 1, 2010, precludes plaintiffs' claims for unpaid prevailing wages for testing and inspection work, all of which are based upon labor performed before that date.[14] Def. SJ Mem. 26-28. Plaintiffs respond that the DOL Opinion Letter is not entitled to the deference normally attributed to agency interpretations because the DOL does not possess "any particular authority to decide who is a 'laborer, workman or mechanic.'" Pl. Opp. 14-15; *see also id.* at 16-18. Moreover, according to plaintiffs, testing and inspection work has always been covered under prevailing wage laws, and thus defendant had a statutory and contractual duty to pay prevailing wages at the time the contracts at issue were made. Plaintiffs suggest that the DOL's decision to apply its ruling only prospectively was the result of defendant's lobbying efforts, and should be given little or no weight. Pl. Opp. 14-18.

The New York Court of Appeals has repeatedly held that agency interpretations, including formal and informal opinions, are entitled to deference unless they are irrational,

---

[14] According to defendant, none of the twenty-nine contracts that plaintiffs identified during discovery contain an explicit provision for the payment of prevailing wages for testing and inspection. Capozzola Aff. ¶ 22.

unreasonable, or go against the plain meaning of the relevant statute.[15] *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 78-79 (2008); *Chesterfield Assocs. v. N.Y. State Dep't of Labor*, 4 N.Y.3d 597, 604 (2005); *Council of the City of N.Y. v. Pub. Serv. Comm'n*, 99 N.Y.2d 64, 74 (2002). In a decision particularly relevant to this case, the Court of Appeals noted that the Commissioner of the Department of Labor is especially well-suited to determine § 220 job classifications. *Lantry v. State*, 6 N.Y.3d 49, 54-55 (2005). In *Lantry*, the Court stated that "it is well settled that trade classifications are a matter given to the expertise of the Department and courts are strongly disinclined to disturb them, absent a clear showing that a classification does not reflect the nature of the work actually performed." *Id.* at 55 (internal quotation marks omitted).

There was nothing irrational or unreasonable about the Commissioner's decision to classify TI work as covered but to require that prevailing wages be paid only prospectively. The Commissioner explains in her letter that the DOL had failed to make its position on testing and inspection work clear, and the decision to require that prevailing wages be paid only on contracts bid upon after clarification seems logical and fair. Although plaintiffs argue that testing and inspection work has always been covered, Pl. Opp. 16, the DOL is in the best position to evaluate the extent of any pre-existing ambiguity surrounding the application of prevailing wage laws to TI work.

Moreover, the ambiguity acknowledged by the Commissioner undermines plaintiffs' effort to impute an obligation to pay prevailing wages for testing and inspection work as a matter of law. As discussed above, I have concluded that plaintiffs are not required to present the underlying public works contracts in order to proceed with their third-party beneficiary claims. I

---

[15] Under federal law, agency interpretations that "lack the force of law," such as opinion letters, are "entitled to respect but only to the extent those interpretations have the power to persuade." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 490-91 (2d Cir. 2001); *see also Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 149 (2d Cir. 2008).

based this ruling on the ground that the obligation to pay prevailing wages was not seriously disputed; plaintiffs and defendant agree that the law requires prevailing wages be paid for covered work. Thus, when SimplexGrinnell took on public works projects, it knew it would be required to pay prevailing wage rates, and it at least implicitly agreed to do so when it entered into a contract to perform work at a public site. According to the DOL, though, SimplexGrinnell did *not* have reason to believe it would be required to pay prevailing wages for testing and inspection work it contracted to perform. Thus, absent a provision in a particular contract explicitly requiring that testing and inspection work be compensated at prevailing wages, there simply is no basis for concluding that SimplexGrinnell agreed to pay prevailing wages for such work. I therefore conclude that defendant may not be held liable for any unpaid prevailing wages for TI work. This aspect of defendant's summary judgment motion is therefore granted.

In his report, plaintiffs' expert concludes that TI work performed in New York City ("NYC TI") should be included in the non-TI category, as work that should be paid at prevailing wage rates, even if the DOL Commissioner's prospective-only ruling is applied. *See* Crawford Rpt. ¶ 16. Plaintiffs explain that NYC TI was included in non-TI hours because "testing and inspection was explicitly covered in the prevailing wage schedules for work for New York City government customers." Pl. D. Opp. 33 n.12.[16] *See also* Pl. 7/29/10 Letter, Docket Entry 146. To support this assertion, plaintiffs rely on § 230 wage schedules for alarm technicians that define the scope of covered work as specifically including testing and inspection. *See* Pl. Ex. 103. Plaintiffs' claims, however, invoke § 220 of the Labor Law; indeed, in their motion for class certification, plaintiffs describe the class they seek to represent as comprised of SimplexGrinnell employees "who have not been paid prevailing wages due them under Section

---

[16] "Pl. D. Opp." refers to Plaintiffs' Opposition to Defendant's Daubert Motion to Exclude the Testimony of David L. Crawford, Ph.D, Docket Entry 116.

220." Pl. Mem. 1. Section 230, though, applies to "Building Service Employees," and its definition of the employees within its scope specifically excludes those "to whom the provisions of article[] eight," which includes § 220, "are applicable." Plaintiffs, therefore, are not covered by § 230. Moreover, New York City's § 220 wage schedules do not include a classification of alarm technician and do not define the scope of work for most laborers. Accordingly, I find that hours spent performing NYC TI work should not be included in the calculation of non-TI hours, and that plaintiffs may not, for the reasons stated above, recover damages with respect to them.

### c. Experts' Zero Damages

Defendant seeks summary judgment on those claims of putative class members for whom plaintiffs' expert calculated zero damages. As plaintiffs point out, however, defendant may be required to supplement the data it has already provided, and it is possible that absent class members who do not have claims for damages now may be able to demonstrate damages in the future. Pl. Opp. 21. Moreover, Dr. Crawford's report will have to be modified to conform with my rulings herein. Therefore, this aspect of defendant's motion is denied.

### d. NYC and Long Island Work

Defendant seeks dismissal of all claims by New York City and Long Island employees subject to a higher prevailing wage rate than plaintiffs' expert employed in his damages calculations. Def. SJ Mem. 32. Defendant contends that New York City and Long Island have multiple prevailing wage rates for the same job classification and acknowledges that plaintiffs' expert "always used the lowest rate available." *Id*. Essentially, defendant complains that plaintiffs' expert was too conservative and that some putative class members might be entitled to greater damages based on a higher prevailing wage rate. As discussed below in connection with defendant's *Daubert* motion, the damages calculations of plaintiffs' expert should not be rejected

because they are based on conservative assumptions that inured to defendant's benefit. It is also not a reason to dismiss claims by these employees. Accordingly, this aspect of defendant's motion for summary judgment is denied as well.

*e. Preemption*

Defendant contends that the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, preempts all of plaintiffs' claims for work in counties with multiple prevailing wage rates. Def. SJ Mem. 34-36. The LMRA preempts any claim that is "substantially dependent on analysis of a collective bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). Defendant here argues that determining the correct prevailing wage to apply in some counties requires analysis of the applicable collective bargaining agreements ("CBAs").

New York Labor Law defines the prevailing wage rate as "the rate of wage paid in the locality . . . by virtue of collective bargaining agreements." N.Y. LABOR LAW § 220(5)(a). The statute, however, further provides that "[t]he prevailing rate of wage shall be annually determined in accordance herewith by the fiscal officer." *Id*. *See also supra* n.12 (providing the websites for the prevailing wage schedules). Accordingly, there is no need for the court to interpret the CBAs to determine the prevailing wage rates as the rates are set by the fiscal officer – the Commissioner of Labor and the Comptroller for the City of New York.

It is, accordingly, not clear that the court needs to undertake any review of the CBAs in this case. First, plaintiffs' expert has reviewed the wage schedules and applied an appropriate rate, apparently without interpreting the CBAs. To the extent that the fiscal officer provides multiple rates for a particular job classification, plaintiffs' expert utilized the lower rate. In addition, even if the court must review the CBAs to determine an appropriate rate, that would not

require the level of analysis or interpretation of a CBA that results in preemption.  "[N]ot every dispute . . . tangentially involving a provision of a collective-bargaining agreement[] is preempted." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).  Accordingly, in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Court noted that, while CBAs often contain wage rates that may be helpful in determining damages, reference to such information does not require a finding that claims are preempted.  486 U.S. at 413 n.12 (citing *Allis-Chalmers Corp.*, 471 U.S. at 211).  For these reasons, the LMRA does not preempt any of plaintiffs' claims.  *See also Livadas v. Bradshaw*, 512 U.S. 107, 123-124 & n.17 (1994); *Wysocki*, 46 A.D.3d at 251-252 (finding that plaintiffs' prevailing wage breach of contract claims were not preempted by the LMRA and noting that "[w]hile collective bargaining agreements are helpful on the issue of prevailing wage rates, they are not necessarily determinative, and do not bear on every issue presented under Labor Law § 220") (internal citation omitted).

*f.  Equitable Claims*

Defendant contends that plaintiffs' equitable claims for quantum meruit and unjust enrichment fail as a matter of law because plaintiffs' claims are governed by contracts.  Where a matter is governed by contract, such as here, plaintiffs cannot recover in quasi-contract, including claims for quantum meruit and unjust enrichment.  *Cox*, 10 N.Y.3d at 607; *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005).  Plaintiffs make clear that these claims are asserted as alternatives to their contract claims.  Moreover, as discussed at length above, defendant contends that plaintiffs will fail to establish the existence of all but a small number of contracts, much less that the contracts were breached.  Accordingly, defendant's motion is denied, without prejudice to renewal if plaintiffs ultimately prevail on their third-party beneficiary breach of contract claims.

*g. Overtime Claims*

Defendant seeks summary judgment on plaintiffs' overtime claims on two grounds. First, defendant contends that plaintiffs cannot bring an overtime prevailing wage claim without exhausting the administrative remedy in § 220. Def. SJ Mem. 40-41. Second, defendant argues that plaintiffs cannot establish the prevailing wage hours for which they are due overtime. *Id*. at 41-42.

With respect to its first argument – overtime prevailing wage claims must be brought pursuant to the administrative remedy outlined in § 220 – case law does not support defendant's contention. Indeed, the very argument plaintiffs make here – that they are entitled to overtime pay based upon their § 220 prevailing wages – was accepted in *Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 354, 361 (E.D.N.Y. 2007). Defendant relies on *Marangos Construction Corp. v. New York State Department of Labor*, 216 A.D.2d 758, 759 (3d Dep't 1995), and *Brown*, 2007 WL 2461823, at *5, for the proposition that the administrative scheme is the exclusive remedy for violations of overtime prevailing wage claims. Def. SJ Mem. 40-41. *Marangos*, however, is silent on this issue; the case is brought by an employer seeking review of Article 78 proceedings, not by an employee seeking overtime wages. In *Brown*, the court dismissed plaintiff's overtime claim because plaintiff had brought it, as well as regular time prevailing wage claims, directly pursuant to § 220, not as a breach of contract claim, and plaintiff's administrative claim was still pending. Thus, there does not appear to be any reason why plaintiffs could not bring overtime prevailing wage claims based on a breach of contract theory, to the same extent as they may with respect to their regular time prevailing wage claims.

Defendant's second argument is simply that plaintiffs failed to establish which, if any, overtime hours resulted in unpaid prevailing wages. Def. SJ Mem. 42. For the reasons discussed

below with respect to defendant's *Daubert* motion, I find that Dr. Crawford has reasonably established the overtime hours subject to prevailing wages and reasonably calculated any unpaid overtime prevailing wages. Therefore, this aspect of defendant's motion is denied.

### h. *Plaintiffs' Fifth Cause of Action*

Finally, defendant moves for summary judgment on plaintiffs' fifth cause of action, a statutory "failure to pay wages," Am. Compl. ¶¶ 38-43, contending that plaintiffs improperly seek liquidated damages and attorneys' fees "by recasting" their third-party beneficiary § 220 claims "as statutory wage claims enforceable under Article 6 (§§ 190-198) of the Labor Law." Def. SJ Mem. 42-43. Plaintiffs do not address defendant's argument in their opposition. This alone would be a basis to grant this aspect of defendant's motion. In their complaint, plaintiffs allege that defendant violated § 191 by failing to pay plaintiffs within the time requirements provided by § 191. Am. Compl. ¶ 40. Other than the fact that plaintiffs may be owed unpaid prevailing wages, there is no evidence that defendant failed to comply with § 191, which requires that manual workers be paid weekly. N.Y. LABOR LAW § 191(1)(a). Plaintiffs also allege that defendant violated § 198-c. Am. Compl. ¶ 41. The statutory language of § 198-c, however, imposes criminal, not civil, liability on an employer for failing to pay benefits and supplements; although some courts have held otherwise, the weight of authority holds that there is no private right of action under this section. N.Y. LABOR LAW § 198-c; *Moran v. GTL Const., LLC*, 2007 WL 2142343, at *5 (S.D.N.Y. July 24, 2007); *Hammell v. Banque Paribas*, 780 F. Supp. 196, 200-01 (S.D.N.Y. 1991) (noting that the New York Court of Appeals affirmed a Fourth Department decision holding that there is no private civil action available under § 198-c); *but see Castagna v. Luceno*, 2011 WL 1584593, at *21 (S.D.N.Y. Apr. 26, 2011) (noting that there is "conflicting case law" whether § 198-c provides a private right of action and ultimately

permitting plaintiff's § 198 claim to proceed). For these reasons, defendant's motion for summary judgment on the fifth cause of action is granted and this claim is dismissed.

For the reasons discussed above, defendant's motion for summary judgment is granted in part and denied in part. More specifically, defendant's motion is granted with respect to plaintiffs' claim for prevailing wages for TI work, including New York City TI work, and with respect to plaintiffs' fifth cause of action. Those claims are dismissed. Defendant's motion is denied in all other respects.

### 3. **Daubert**

In the third of the pending motions, defendant seeks to strike the report of David L. Crawford, Ph. D., plaintiffs' expert. Def. D. Mem.[17] Trial courts serve as "gatekeepers," responsible for "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Defendant challenges Dr. Crawford's report as riddled with errors and unreliable. For the reasons stated below, defendant's motion is denied.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which imposes two basic prerequisites for admitting expert testimony at trial. First, the witness must be properly qualified as an expert to testify on scientific, technical, or specialized matters. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81-82 (2d Cir. 1997). Second, the court must determine whether the expert testimony is both relevant and reliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert*, 509 U.S. at 597. In determining whether any step in an expert's analysis is reliable, a court

---

[17] "Def. D. Mem." refers to defendant's Memorandum of Law in Support of its *Daubert* Motion, Docket Entry 110-1. Dr. Crawford's Report ("Crawford Rpt.") may be found at Plaintiffs' Exhibit 1, Docket Entry 109-3, to their motion for class certification and summary judgment.

should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand. A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible. "The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions."

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994), and citing *Daubert*, 509 U.S. at 590). A proponent of expert testimony must prove that the elements of Rule 702 have been satisfied by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10; FED. R. EVID. 702, Advisory Committee Notes to 2000 Amendments.

When considering whether to admit expert testimony, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Moreover, the court must bear in mind that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. Accordingly, the rejection of expert testimony should be "'the exception rather than the rule.'" *U.S. Info. Sys. Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 313 F. Supp. 2d 213, 226 (S.D.N.Y. 2004) (quoting the Advisory Committee Notes to the 2000 Amendments to Rule 702).

Plaintiffs seek to admit Dr. Crawford's report to establish the amounts due to the members of the plaintiff class as damages. Dr. Crawford claims to have calculated "the difference between the wages and benefits that would have been received [by the plaintiff class] if prevailing wage and benefit rates had been applied whenever it was appropriate to do so for fire alarm and sprinkler work and the actual wages and benefits that were received for such

work." Crawford Rpt. ¶ 15. Dr. Crawford derived his calculations from data in electronic files provided by defendant during the course of this litigation. *Id.* ¶¶ 11-12.

Dr. Crawford holds a Ph.D. in Economics and is the president and founder of Econsult, an economics and statistics consulting firm. Crawford Rpt. ¶¶ 1, 5. He also serves as an adjunct professor at the Wharton School, where he has won several awards for his teaching, and has been qualified as an expert and testified in numerous cases over the past five years. *Id*. ¶¶ 4, 6 and Ex. 1. *See also*, *e.g.*, *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 95 (S.D.N.Y. 2010) (qualifying Dr. Crawford as an expert and finding that his report "easily satisf[ies] the requirements of Rule 702"). Accordingly, I find that Dr. Crawford's credentials and experience render him qualified to offer the expert testimony reflected in his report, and it seems defendant does not contend otherwise. *See*, *e.g.*, Def. D. Mem. 1-2. Rather, defendant's motion challenges the methodology Dr. Crawford used and the reliability of the results he reached. *Id*. at 3-55.

As set forth in detail in his report, Dr. Crawford determined the number of hours worked by plaintiffs and the hourly wage and benefit rates plaintiffs were paid primarily by analyzing data culled from defendant's "Time Entry" system. Crawford Rpt. ¶ 14. To determine how many of those hours of labor constituted "covered work" subject to prevailing wage law requirements, Dr. Crawford also reviewed data from electronic files referred to by defendant as its "Project Data" and computerized lists provided by defendant of public sector jobs it completed. Crawford Rpt. ¶ 15; Crawford Decl. ¶ 6, Docket Entry 109-2. Finally, Dr. Crawford relied upon New York State and City Prevailing Wage Schedules for fire alarm and sprinkler work to determine the applicable prevailing wage and benefit rates plaintiffs were entitled to be paid for covered work. Plaintiffs assert that, armed with these electronic files produced by defendant and the relevant prevailing wage schedules, Dr. Crawford was able to calculate the

number of hours worked by each class member on prevailing wage jobs as well as the number of hours of labor for which each class member was paid the proper prevailing wages and benefits. According to Dr. Crawford, many of defendant's employees worked more hours that should have been paid at prevailing wage rates than in fact were. Dr. Crawford calculated damages based upon the difference between hours of covered work plaintiffs performed and those for which they were paid at applicable prevailing wage and benefit rates.

Dr. Crawford, however, was unable to tie all hours of labor reflected in defendant's Time Entry database to those derived from defendant's Project Data. This problem arose because data reflecting work performed in the Project Data indicated only the date the data was entered and not the date the work itself was actually performed. Crawford Decl. ¶ 9; Def. D. Mem. 17-18. As a result, Dr. Crawford was unable to link Time Entry data for a particular week to Project Data information for the same week. More specifically, while Dr. Crawford was able to determine from the Time Entry data how many hours a class member worked during a particular week and how much the class member was paid, he was not able to determine accurately from defendant's Project Data whether the class member worked on a public works project during that particular week. Nonetheless, as discussed below, it appears that the total amount of damages calculated by Dr. Crawford was not materially affected by this inability to match up data on a weekly basis.

Defendant's motion focuses primarily upon what appear to be crude errors in Dr. Crawford's report but in fact, it seems, result only from Dr. Crawford's inability to match up weekly Time Entry and Project Data. For example, defendant points to Dr. Crawford's claim that one plaintiff is owed prevailing wages for 36 hours of work performed during a week when the plaintiff was on jury duty, and another for work done when he was in fact attending a training

session in California.  Def. D. Mem. 22-23.  Plaintiffs have logically explained, however, that these apparent errors result from the lack of accurate information in defendant's Project Data about when labor was performed.  Therefore, as plaintiffs also explain, what appear to be "errors" – which in fact arise only because hours in the Time Entry and Project Data cannot be matched – cancel out when the total number of covered hours worked and the hours of prevailing wages paid are compared.  In other words, while there may be weeks when Dr. Crawford claims prevailing wage work was performed when in fact it was not, there will necessarily, as a matter of logic, be other weeks when an equal amount of prevailing wage work *was* performed but none is reflected in Dr. Crawford's calculations.  Indeed, defendant acknowledges that "[f]or many weeks . . . Dr. Crawford found hours paid at prevailing wage according to the timekeeping data, but he found no corresponding prevailing wage work in the project billing data."  Def. D. Mem. 3; *see also id.* at 26.  Put simply, when considered in their entirety rather than on a week-by-week basis, the Time Entry data will reflect the number of hours for which any class member was paid prevailing wages and the Project Data set will reflect the number of hours of prevailing wage work performed.  Pl. D. Opp. 15.  It therefore follows that, when totals are calculated for the time period relevant to the lawsuit, any week-by-week discrepancies or variations are rendered irrelevant.

Defendant contends that even the week-by-week errors or discrepancies described above could have been avoided, and a more reliable result obtained, had Dr. Crawford relied on defendant's paper records rather than its electronic files.  I reject this argument for several reasons.  First, as indicated above, plaintiff has explained the apparent errors in Dr. Crawford's week-by-week calculations, and demonstrated – sufficiently, at least, for purposes of admissibility – that they do not undermine the reliability of Dr. Crawford's results.  Moreover,

defendant has not demonstrated that calculations based on its paper records would be more accurate than those based on its electronic data. Finally, as defendant has acknowledged, its paper records number more than one million documents, and are located at various offices throughout New York State. Def. D. Mem. 12-13. In light of these circumstances, it was reasonable for Dr. Crawford to rely upon defendant's electronic files.

In a related argument, defendant contends that the reliability of Dr. Crawford's report is undermined by its failure to account for data in defendant's "PeopleSoft" database. Defendant points out that PeopleSoft includes data reflecting payments of prevailing wages by means of manual overrides. Def. D. Mem. 27-31. As plaintiffs state in response, however, it appears that Dr. Crawford's calculations reveal that his decision not to rely on PeopleSoft had little impact on his final results. In response to plaintiffs' document demands, defendant only identified approximately 700 manual override forms. Pl. D. Opp. 27 (citing Pl. Ex. 8). Moreover, as defendant acknowledges, some of the manual override information in PeopleSoft was also entered into the Time Entry system that Dr. Crawford used to prepare his report. Def. D. Mem. 28.

Defendant challenges other aspects of Dr. Crawford's analysis as well. For example, defendant argues that Dr. Crawford did not reliably allocate time as TI or non-TI. If so, this would be particularly significant in light of my ruling that plaintiffs are not entitled to prevailing wages for TI work.

According to Dr. Crawford, he determined whether hours of work were TI or non-TI hours based upon certain codes in defendant's Project Data. Crawford 7/13/10 Decl. ¶ 2, Docket Entry 140-1. Defendant contends that Dr. Crawford erred in his allocation of TI and non-TI hours and failed to capture some TI hours at all. Def. D. Mem. 32-33, 35-36, 38-39. For

example, defendant notes that its paper records indicate that named plaintiffs Oyarvide and Ramos performed many hours of TI work in 2004 and 2005 that are not reflected in Dr. Crawford's Report. Def. D. Mem. 35-36. Defendant also asserts that Dr. Crawford failed to identify all codes reflecting testing and inspection work in defendant's Time Entry database. Def. Letter dated Aug. 17, 2010, Docket Entry 148. It does not follow, however, that the alleged discrepancies that defendant cites result from flaws in Dr. Crawford's methodology. If Dr. Crawford failed to identify accurately those codes that indicate TI work and those that do not, the problem would be in the factual assumptions Dr. Crawford made and not in his methodology, and a ruling striking Dr. Crawford's report would be unwarranted. Moreover, after oral argument on the motions, Dr. Crawford recalculated his allocation of TI and non-TI hours worked by plaintiffs, taking some of defendant's contentions into account and – for what seem to be logical reasons – declining to adopt others. Crawford 7/13/10 Decl.; *see also* Crawford 8/24/10 Decl., Docket Entry 149-1 (revising again his allocation of TI and non-TI hours). I find the explanations offered by Dr. Crawford with respect to the steps he took after the oral argument to be clear and the steps themselves reasonable and likely to have yielded sufficiently reliable results to support the admission of Dr. Crawford's report at trial.

Emphasizing yet another apparent anomaly in Dr. Crawford's results, defendant points out that Dr. Crawford's report concludes that some plaintiffs are owed zero damages.[18] Plaintiffs, however, have logically explained that SimplexGrinell paid some employees a regular wage that was greater than or equal to the prevailing wage rate, without regard to whether the employee was working at a public site subject to prevailing wage laws. Tr. 66-67. Under that

---

[18] Defendant also notes that Dr. Crawford calculates some class members as having negative damages, i.e., defendant overpaid them. Def. D. Mem. 25-27. Some of these anomalies may be due to the inability to match Time Entry and Project Data, or because Dr. Crawford made some conservative assumptions, as discussed in the text. In any event, these negative damage calculations do not support barring Dr. Crawford's report.

circumstance, the employee would have no claim for prevailing wages even if defendant never differentiated between work on private and public sector jobs.  Dr. Crawford further explained that the data provided by defendant included entries for some employees with job titles indicating an exemption from prevailing wage requirements, and that he therefore attributed zero damages to those employees as well.  Crawford 7/13/10 Decl. ¶ 7.

Defendant next cites to several conservative assumptions made by Dr. Crawford and argues that the resulting inaccuracies in Dr. Crawford's report should preclude its admission at trial.  For example, where more than one prevailing wage and benefit rate was arguably applicable, Dr. Crawford based his damages computation on the lowest potentially applicable rate.  Def. D. Mem. 39-42.  Similarly, when Dr. Crawford realized that defendant's Time Entry data, while indicating whether prevailing wages were paid or not, did not reveal whether prevailing wages were paid for TI or non-TI work, he allocated all paid hours first to offset non-TI hours earned, then any remainder to offset TI hours earned; if any hours paid still remained, Dr. Crawford allocated them as non-TI hours paid.  Crawford Rpt. 8 n.3; *see also* Crawford Dep. 411-13; Crawford 6/22/10 Decl. ¶ 5, Docket Entry 136-2.  Defendant is correct to say that, if Dr. Crawford had obtained more precise information about which rate applied, or whether prevailing wages were paid for TI on non-TI work, he no doubt could have produced a report that was both more accurate and more beneficial to the class.  Clearly, however, defendant will suffer no prejudice as a result of Dr. Crawford's conservative assumptions, and those assumptions are not a basis for excluding Dr. Crawford's testimony.  *See Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 173-74 (D.N.J. 2008) (denying defendants' *Daubert* motion where the expert made assumptions, among other things, that "tended to suppress his estimate of damages"); *U.S.A. ex rel. Tyson v. Amerigroup Illinois, Inc.,* 488 F. Supp. 2d 719,

733-34 (N.D. Ill. 2007) (stating that "[i]f all [the plaintiffs' expert] was trying to do was provide a more conservative damages estimate, and this benefitted [defendant], this Court does not believe that it would render his methodology so unreliable as to be inadmissible under *Daubert*"). Moreover, any class members concerned that Dr. Crawford has understated the amount of wages they are owed has the option of declining to join the class and bringing an individual action.[19] *See* FED. R. CIV. P. 23(c)(2)(B)(v), (vii) (requiring notice to class members of their right to be excluded from the class).

I have considered each of defendant's contentions and, as indicated above, I do not find them to be sufficient to warrant exclusion of Dr. Crawford's testimony or report at trial. Most of defendant's arguments concern Dr. Crawford's results and not his methodology, and are therefore not a proper basis for exclusion. *See*, *e.g.*, *Daubert*, 509 U.S. at 595; *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (holding that an expert's "unfounded" assumptions go to the weight, not the admissibility, of the testimony); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (stating that "[a]lthough expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.") (internal quotation marks and citations omitted). Defendant's primary challenge to Dr. Crawford's methodology concerns his decision to rely on defendant's electronic data rather than its paper records. For the reasons discussed above, however, I conclude that this decision was reasonable and appropriate.

---

[19] Although I have not yet heard from the parties on this subject, I suggest that the class notice include a means of gaining access to Dr. Crawford's report – perhaps by providing a website where it may be viewed – so that a potential class member can learn the amount of damages calculated by Dr. Crawford on his or her behalf before deciding whether to participate in the class action.

Finally, to the extent that Dr. Crawford approximated damages owed rather than calculating them precisely, this is not fatal to the admissibility of either his testimony or the conclusions in his report. Under New York law, it is "well established" that "'[t]he rule of certainty as applied to the recovery of damages does not require mathematical accuracy or absolute certainty or exactness, but only that the loss or damage be capable of ascertainment with reasonable certainty.'" *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 444 (S.D.N.Y. 2008) (internal citations omitted). This rule applies with particular force here, where defendant's records are arguably deficient in several respects, including the failure to account for certain prevailing wage work performed through consistently applied procedures and instead requiring "manual overrides." *Cf. Alphonse Hotel Corp. v. Sweeney*, 251 A.D.2d 169, 169-70 (1st Dep't 1998) (recognizing the Labor Commissioner's authority to approximate any § 220 underpayment where an employer's records are inadequate or inaccurate); *Mid Hudson Pam Corp. v. Hartnett*, 156 A.D.2d 818, 820-21 (3d Dep't 1989) (noting that the "remedial nature of the enforcement of the prevailing wage statute . . . and its public purpose of protecting workmen . . . entitled the Commissioner to make just and reasonable inferences in awarding damages to employees even while the results may be approximate" and that the burden then shifts to the employer to negate those inferences). Indeed, a defendant whose recordkeeping is deficient bears the burden of coming forward with evidence to contradict any estimate based upon "just and reasonable inferences" offered by plaintiff. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997); *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 272-73 (E.D.N.Y. 2008).

For all these reasons, defendant's motion to strike the report and testimony of plaintiffs' expert is denied.

### 4. Plaintiffs' Summary Judgment Motion

Plaintiffs move for summary judgment on both liability and damages, relying extensively on Dr. Crawford's Report.  As discussed above when addressing defendant's *Daubert* motion, defendant has raised material questions of fact about the accuracy of Dr. Crawford's calculations.  For example, defendant has pointed to paper time records of individual employees that seem to be inconsistent with Dr. Crawford's calculations with respect to those employees.  *See*, *e.g.*, Def. SJ Opp. 6, Docket Entry 115.  Defendant has also raised a question of fact with respect to whether Dr. Crawford accurately distinguished TI and non-TI hours of labor.  Docket Entry 148.  Finally, the court assumes that Dr. Crawford will be required to further refine his calculations in light of the holdings set forth above.  For all these reasons, plaintiffs' motion for summary judgment is denied.

### CONCLUSION

Plaintiffs' motion for class certification is granted.  Defendant's motion for summary judgment is granted with respect to TI work and plaintiffs' fifth cause of action and denied in all other respects.  Defendant's *Daubert* motion is denied.  Plaintiffs' motion for summary judgment is denied.

SO ORDERED.

Dated:     Brooklyn, New York
           June 21, 2011

                                        _____
                                                /s/
                                        STEVEN M. GOLD
                                        United States Magistrate Judge

*U:\eoc 2011\ramos final.docx*