UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ROBERTO RAMOS, et al.,

                Plaintiffs,                         Memorandum & Order
                                                                  07-CV-981 (SMG)

    -against-

SIMPLEXGRINNELL LP,

                Defendant.
------------------------------------------------------x
*Gold, S., United States Magistrate Judge*:

        Plaintiffs, on behalf of themselves and as representatives of a class composed of certain employees of defendant, bring this action seeking to recover unpaid prevailing wages for their work on various public works projects.[1]  Plaintiffs are fifteen current and former employees of defendant who performed electrical and sprinkler work, including installation, maintenance, inspection, testing, repairs, and replacement of fire alarms and security systems, on various public works projects throughout the state.  Am. Compl. ¶ 18, Docket Entry 56.  Plaintiffs contend that defendant failed to pay the named plaintiffs and the members of the class all the prevailing wages due to them for their work on public works projects.

        On June 21, 2011, I certified a class composed of

> [A]ll laborers, workmen and mechanics who furnished labor to SimplexGrinnell on non-federal public works projects in the State of New York at any time from February 6, 2001[, or from July 14, 2001 for sprinkler work] until the final judgment in this matter, and who . . . have not been paid prevailing wages and benefits as required by law.

---

[1] Pursuant to New York law, public works contracts – i.e., contracts with state or local governmental agencies to perform construction, maintenance and repair of public buildings – must provide that all laborers will be paid prevailing wages.  N.Y. LABOR LAW § 220(3).

Memorandum & Order ("M&O") 3-4, 18, Docket Entry 154. At the same time, I denied, in part, defendant's motion for summary judgment and denied plaintiffs' cross-motion for summary judgment in its entirety.[2] M&O.

After extensive negotiations conducted with the assistance of a private mediator, the parties have agreed to the terms of a Joint Stipulation and Agreement ("Stipulation"), Docket Entry 228-3, that settles plaintiffs' claims. The parties now move for preliminary approval of the settlement and approval of notice to the class. Docket Entry 228. For the reasons stated below, the motions are granted.

### STIPULATION AND AGREEMENT OF SETTLEMENT

Pursuant to the Stipulation, defendant agrees to pay $5,525,000, plus certain employer payroll taxes. Stipulation ¶¶ 17, 42. Before distributing the settlement to the class, attorney's fees, expenses, class representative enhancement payments, and settlement administration costs are to be deducted. *Id.* ¶¶ 43(a), 43(b), 43(e), 43(f). Assuming the maximum amounts permitted under the Stipulation are deducted, the minimum net settlement amount available for distribution to class members will be $3,235,833. Dr. David Crawford, plaintiffs' damages expert, has calculated the *total* damages owed to the class to be $12,512,308.[3] Docket Entry 164 at 74. Thus, pursuant to the settlement, plaintiffs will receive approximately 26% of the damages calculated by their expert.

The proposed Stipulation provides that each class member, excluding the eighteen individuals who previously opted out of the class, shall receive a share of the settlement proceeds

---

[2] I granted defendant's motion with respect to whether covered prevailing wage work included testing and inspection. M&O 31. As part of the settlement, plaintiffs have reserved their right to appeal my decision denying the inclusion of testing and inspection work in any recoverable prevailing wages calculation. Stipulation ¶ 32.
[3] The amounts Dr. Crawford calculated as due to the eighteen opt-out class members have been subtracted from Dr. Crawford's total damages calculation. *See* Stipulation ¶ 43(g).

to the extent Dr. Crawford calculated he is owed any wages.[4]  Stipulation ¶ 43(g).  More specifically, each class member will receive a percentage of the net settlement amount equal to the percentage of his share of damages as previously calculated by Dr. Crawford, Docket Entry 164 at 58-74.  For example, Dr. Crawford calculated class member Mark Accardi's damages, plus interest, to be $35,964.  Accardi's percentage share of Dr. Crawford's total damages is .287% (35,964/12,512,308).  Pursuant to the settlement, Accardi would receive approximately $9,286.84.[5]

## DISCUSSION

Federal Rule of Civil Procedure 23(e) requires notice to class members and judicial approval of any class settlement.  The court may approve a class action settlement only upon a finding that the settlement is both procedurally and substantively fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (outlining factors for courts to consider in determining the substantive fairness of proposed settlements).

There is "a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds*, 588 F.3d at 803 (internal quotation marks omitted).  Moreover, there is a "strong judicial policy" and public policy in favor of class settlements.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

Here, the parties engaged in extensive discovery, and plaintiffs retained an expert who prepared detailed reports about the amounts due and owing to members of the class.  After I issued my Memorandum & Order granting class certification and granting, in part, defendant's

---

[4] Dr. Crawford found that approximately 200 class members are not owed any prevailing wages.
[5] As noted above, defendant will also payroll taxes on 50% of each individual's award.  Stipulation ¶ 43(h).

motion for summary judgment, the parties engaged in lengthy settlement negotiations guided by a mediator.  I am satisfied that the parties engaged in arm's-length negotiations that resulted in a proposed settlement that is procedurally fair and reasonable and not the result of any collusion.  *See* Pl. Mem. 4, Docket Entry 228.

A court determines whether a proposed settlement is substantively fair by considering the following *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).  *See also Wal-Mart Stores*, 396 F.3d at 118-19 (combining the fourth, fifth and sixth factors and combining the eighth and ninth factors).  These factors weigh heavily in favor of finding the proposed settlement fair.

First, the parties have already spent five years litigating this case.  This case is complex and raised some novel issues.  Any trial would have required resolution of numerous motions in limine, *see* Docket Entries 197-207, and was expected to consume the entire month of June, 2012.  Second, and as noted above, the case was on the eve of trial when the settlement was reached.  By that time, the parties had engaged in extensive discovery that was more than sufficient to allow counsel to make a well-informed decision about the fairness of the

settlement.[6]  *See* Stipulation ¶ 29.  Third, plaintiffs faced significant risks in establishing liability and damages at trial.[7]  *See* M&O 27 (denying defendant's summary judgment on the ground that plaintiffs failed to obtain all of the public works contracts at issue but allowing defendant to submit evidence that would negate its liability); Stipulation ¶ 30.  Of particular significance, defendant moved to exclude the testimony of plaintiff's expert, Dr. Crawford, Docket Entry 200.  Plaintiffs' claims heavily relied on Dr. Crawford's analysis.  Defendant strenuously challenged almost each and every aspect of Dr. Crawford's methodology and calculations, and Dr. Crawford was likely to be vigorously cross-examined at trial.  Docket Entry 200; *see also* Docket Entries 110 (defendant's *Daubert* motion challenging Dr. Crawford's report), 207-3 (defendant's expert report challenging the reliability of Dr. Crawford's methodology and results).  Thus, plaintiffs faced considerable risks in obtaining a judgment at any trial.  Fourth, the defendant is a national "leader[] in fire and life-safety systems" with thousands of contracts with New York state and city agencies, M&O 1, and could likely withstand a greater judgment.  This factor therefore does not favor settlement.  Fifth, and finally, the settlement fund is reasonable in light of the attendant risks discussed above.  Plaintiffs will receive approximately 26% of the damages calculated by Dr. Crawford, an amount that is reasonable in light of the significant risks plaintiffs faced at trial.  For these reasons, plaintiffs' motion for preliminary approval of the proposed settlement is granted.

---

[6] Because a fairness hearing has not yet been held, I do not know the reaction of the class to the settlement at this stage of the case.  However, I do note that, of the more than six hundred individuals identified as part of the class, only eighteen opted out.  Pl. Mem. 4, 6.  The opt-out notice informed individuals how to access Dr. Crawford's report on the court's PACER website, so that individuals could review their potential damages awards.  Notice ¶¶ 10, 12, Docket Entry 163.

[7] There is always a risk of decertification, *see Wal-Mart Stores*, 396 F.3d at 119 n.24, but it appears likely that the class here would be sustained through the trial.

**CONCLUSION**

Plaintiffs' motion for preliminary approval of the settlement is granted. I have reviewed the parties' revised notice, Docket Entry 230, and find that it addresses my initial concerns and meets the requirements of Rule 23(e). As previously indicated, the court will hold a fairness hearing at **3:00 p.m. on October 3, 2012**.

SO ORDERED.

Dated:	Brooklyn, New York
	July 17, 2012

							/s/
							STEVEN M. GOLD
							United States Magistrate Judge

*U:\eoc 2012\ramos prelim approval - final.docx*